UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re BRIDGEPOINT EDUCATION, INC., SECURITIES LITIGATION | Civil No.   12cv1737 JM (JLB)<br><br>**ORDER REGARDING DISCOVERY DISPUTES**<br><br>**[ECF No. 61]** |

A telephonic discovery conference was held in the instant action on June 27, 2014. During the course of the conference, the Court issued oral orders on discovery disputes one, three and four. As to the second dispute, the Court requested supplemental briefing. (ECF No. 61.) Having reviewed the parties' supplemental briefs, the Court now issues a ruling on the second dispute raised during the June 27, 2014 conference. Additionally, this Order confirms in writing the Court's oral discovery orders as to disputes one, three and four.

**A. Dispute No. One**

In their letter brief to the Court, Plaintiffs argued that Defendants should be compelled to produce documents that relate to accreditation. Plaintiffs argued that although their accreditation claim had been dismissed, the surviving claim related to student persistence, retention, and graduation rates is so closely intertwined with Ashford's[1] failed WASC accreditation that discovery should be compelled as to accreditation documents.[2]

---

[1] The parties use "Bridgepoint" and "Ashford" interchangeably in their briefs. The language of this order reflects the parties' usage.

[2] Plaintiffs' claim concerning the WASC accreditation process was dismissed on September 13, 2013. (ECF No. 39.)

     In support of their argument, Plaintiffs cited to language from United States District Judge Jeffrey T. Miller's Order on Defendants' Motion to Dismiss: "If discovery reveals that Defendants knew that denial of accreditation would be denied, then Plaintiff may be permitted to amend . . . ." (ECF No. 39 at 33.) Plaintiffs interpreted this language to be an acknowledgment from Judge Miller that discovery related to accreditation is relevant even without the accreditation claim being a part of the operative complaint.

     Defendants argued that Plaintiffs are not entitled to discovery that relates solely to the dismissed accreditation claim and that Plaintiffs have incorrectly interpreted Judge Miller's language. Defendants submitted that they have already agreed to produce documents relating to Plaintiffs' remaining claim regarding persistence, even if such documents also relate to the topic of accreditation; but they should not be required to produce documents that relate only to accreditation and not retention.

     The Court held that Plaintiffs are not entitled to discovery relating only to dismissed claims. The Court found Plaintiffs' reliance on Judge Miller's language to be misplaced. Having consulted with Judge Miller, the Court concluded that the quoted language did not allow for the specific discovery sought. Rather, Judge Miller had contemplated that if, in the course of engaging in discovery related to the remaining claim, Plaintiffs obtain discovery that supports the dismissed claim, Plaintiffs may seek leave to amend. Judge Miller was not, by that language, authorizing Plaintiffs to engage in discovery directed solely at the dismissed claim. Accordingly, the Court held that Plaintiffs may obtain documents that relate to accreditation <u>only</u> if those documents also relate to persistence. The Court held that Defendants are not required to produce documents that relate solely to accreditation.

**B. Dispute No. Two**

     This unresolved discovery dispute concerns Plaintiffs' request for discovery extending beyond the time frame that Defendants have agreed to. Defendants submit that they have agreed to review and produce documents from a 34-month period beginning seventeen months prior to the class period and ending four months after the class period -

January 1, 2010 to November 1, 2012. Plaintiffs seek documents from an additional nine-month timeframe - November 1, 2012 to July 31, 2013.

In their initial letter brief, Plaintiffs argue that documents from this additional nine-month period are relevant to the instant action and should be compelled. Documents from this time period are sought in order to discover discussions of Bridgepoint's efforts and failures regarding the student persistence, retention, and graduation rates which resulted in the denial of Bridgepoint's first accreditation attempt. Plaintiffs cite to a number of cases in which courts have held that pre and post-class period discovery can lead to admissible information. Plaintiffs argue that documents from this timeframe relate to Ashford's second accreditation attempt and are relevant because the documents are likely to discuss Bridgepoint's first accreditation attempt.

Defendants argue that documents from this additional nine-month period are not relevant to the remaining claim and therefore should not be compelled. Defendants further submit that this additional discovery is not appropriate because the alleged class period runs from May 3, 2011 to July 13, 2012, and Defendants have already agreed to produce documents from January 1, 2010 to November 1, 2012. The last remaining challenged statement was made on May 1, 2012, and "Plaintiffs allege that the 'truth' was revealed to investors on July 9, 2012." (Defendants' June 19, 2014 Letter at 4.) Finally, Defendants argued that the substantial burden and expense of reviewing documents from this additional period outweighs the limited probative value of any responsive documents.[3]

Defendants' supplemental brief sets forth detailed estimates as to the time and cost of undertaking this additional document production. Based on the production efforts to date, Defendants estimate that production from the additional time frame would increase Defendants' review costs by 26 percent, or roughly $390,000.

---

[3] The Court requested additional briefing regarding Defendants' burden argument. Defense counsel was directed to lodge a supplemental letter brief on or before July 3, 2014 addressing this burden of production. Plaintiffs' counsel was directed to file a reply brief on or before July 10, 2014. (ECF No. 61.) On July 11, 2014, the Court issued a minute order directing Defendants to submit an informal letter brief responding to the arguments raised in Plaintiffs' July 10, 2014 Letter. (ECF No. 65.)

Plaintiffs' reply brief offers a much more modest figure. Plaintiffs argue that the figure offered by Defendants reflects the cost of manual review rather than the predictive coding system that Defendants will employ. According to Plaintiffs, the cost of predictive coding is the only cost relevant to Defendants' burden. Plaintiffs estimate that the additional burden to Defendants is roughly $11,279. After documents have been identified as relevant, Plaintiffs argue that the additional time and expense of undertaking a privilege review can be mitigated by utilizing search terms. Additionally, manual review for relevance is elective and should not be considered. Even if Defendants' cost figure is accepted, Plaintiffs contend that such documents are relevant and that the burden does not outweigh the benefit of discovery because Defendants have "conceded the relevance of this post-class period information."[4] (Plaintiffs' July 10, 2014 Letter at 2.)

Per the Court's request, Defendants submitted a reply brief addressing the arguments raised by Plaintiffs. Defendants argue that predictive coding software does not make

//

---

[4] The language upon which Plaintiffs rely does not support a claim of any such "concession." Rather, the relevant section states:

> if there were any admissions regarding persistence deficiencies in the first accreditation application (which is what Plaintiffs claim they seek), they would be found in the months during which Ashford analyzed the reasons for the denial and whether to pursue the appeal, and prepared the second application – i.e., the months from July 2012 through October 2012. Such documents are not likely to exist in the months from November 2012 to July 2013, while the second accreditation application was pending, and during which the only significant event was WASC's April 2013 site visit and the ultimate accreditation in July 2013.

(Defendant's July 3, 2014 Letter at 3.) Defendants' reply brief addressed Plaintiffs' contention that Defendants have conceded relevancy:

> contrary to Plaintiffs' assertion, Defendants do not "concede" the relevance of documents regarding Ashford's second WASC application. Rather, as Defendants noted in their July 3 letter, the "admissions" Plaintiffs claim to be seeking from Ashford's second WASC application would more likely be found (if at all) in the time period leading up to Ashford's October 11, 2012 submission of that second application, which is within the time frame Defendants already agreed to review.

(Defendants' July 16, 2014 Letter at 2.)

manual review for relevance[5] merely elective. Rather, the software assigns a percentage estimate to each document that reflects the assessment of the probability that the document is relevant. Defendants argue that such software is not foolproof and that attorney review is still required to ensure that the documents produced are both relevant and not privileged. As such, the cost for manual review cannot be ignored. (Defendants' July 16, 2014 Letter at 1.)

**1. Legal Standard**

Under Federal Rule of Civil Procedure 26(b)(1), a court may limit discovery of relevant material if it determines that the discovery sought is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit. Fed. R. Civ. P. 26(b)(2)(C). The party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted. *Brady v. Grendene USA, Inc.*, 2012 WL 6086881, 2 (S.D. Cal. Dec. 6, 2012). However, once the resisting party meets its burden, the burden shifts to the requesting party to show that the information is relevant and necessary. *Id*.

**2. Conclusion**

Having reviewed the arguments advanced by the parties, the Court finds that Defendants have set forth sufficient evidence to conclude that the additional production would be unduly burdensome. Furthermore, the substantial burden of producing documents from this time period outweighs the benefit of the additional discovery. While relevant documents may exist from this time period, the Court is persuaded by Defendants' argument that documents discussing the failure of the first accreditation application are much more likely to be found in the time period leading up to the submission of the second application - not after. Defendants have already agreed to produce documents from the time period

---

[5] Defendants use the term "responsiveness" when responding to Plaintiffs' argument about "relevance." It appears that the term is used interchangeably. To avoid confusion, the Court will only use the term "relevance."

leading up the second application submission. Accordingly, Plaintiffs' request for documents from the period of November 1, 2012 to July 31, 2013 is hereby **DENIED**.

### C. Dispute No. Three

In their letter brief, Plaintiffs argued that Defendants should be required to produce all documents related to insider trading. While Plaintiffs acknowledged that their stand-alone insider trading claims have been dismissed, Plaintiffs argued that the Individual Defendants' stock transactions remain relevant to scienter - an element of Plaintiffs' remaining claim. While Defendants have agreed to produce the Individual Defendants' Rule 10b5-1 insider trading plans, any amendments to those plans, as well as emails regarding transactions that also discuss persistence, they refuse to produce any other emails discussing the Individual Defendants' transactions in Bridgepoint stock.

Defendants argued that Plaintiffs are not entitled to discovery regarding the dismissed insider trading claims. Defendants contend that no allegations about Individual Defendants' trades remain alive in this case and accordingly, Defendants are not required to produce additional emails.

The Court held that Defendants are to produce trading plans, amended trading plans, and emails about trades that also concern or reference the issue of persistence. If discovery indicates that any of the Individual Defendants amended their trading plans, and Plaintiffs feel that they are entitled to additional emails regarding the reasons behind the amendments, the parties are directed to meet and confer. If an agreement cannot be reached, the parties may then seek Court intervention.

### D. Dispute No. Four

Plaintiffs argued that the documents already produced for the Individual Defendants should be run through the predictive coding software. "Before Plaintiffs even propounded their discovery requests, Defendants ran a list of unilaterally-selected search terms over the Individual Defendants' documents . . . ." (Plaintiffs' June 19, 2014 Letter at 5.) Plaintiffs
//

argued that Defendants were now wrongfully refusing to include these documents in the predictive coding process.

Defendants submitted that their choice of review method for the Individual Defendants' emails is reasonable and that they should not be required to run the documents that have already been screened through the predictive coding process. Defendants argued that putting the Individual Defendant documents already screened through predictive coding is likely to negatively impact the reliability of the predictive coding process. Defendants suggested that they would be willing to run additional search terms for the documents already screened but were not amenable to running these documents through the predictive coding process.

The Court approved Defendants' method of using linear screening with the aid of search terms to identify responsive documents with regard to the emails already reviewed for the three Individual Defendants. The parties were directed to meet and confer regarding the additional search terms Plaintiffs would like Defendants to use.

**IT IS SO ORDERED.**

DATED:  August 6, 2014

_____
**JILL L. BURKHARDT
United States Magistrate Judge**